UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TDATA INC.

        Plaintiff,                               Case No. 2:03-cv-264
                                               JUDGE GREGORY L. FROST
     v.                                           Magistrate Judge Terence P. Kemp

AIRCRAFT TECHNICAL PUBLISHERS,

        Defendant.


AIRCRAFT TECHNICAL PUBLISHERS,

        Plaintiff,                               Case No. 2:04-cv-1072
                                               JUDGE GREGORY L. FROST
     v.                                           Magistrate Judge Terence P. Kemp

TDATA INC.

        Defendant.

**OPINION AND ORDER**

This matter is before the Court for consideration of the following sets of filings:[1]

(1) a motion *in limine* to exclude the testimony of Laura Thieme filed by Aircraft Technical Publishers ("ATP") (Doc. # 285) and a memorandum in opposition filed by Tdata Incorporated ("Tdata")  (Doc. # 290);

(2) a motion *in limine* to exclude reference to actual confusion filed by ATP (Doc. # 287) and a memorandum in opposition filed by Tdata (Doc. # 291); and

---

[1] For ease of reference, the Court shall refer to the filings here only by their docket number in case No. 2:03-cv-264.

1

(3) a motion *in limine* to exclude reference to any detriment that a damages award may cause to Tdata or its employees filed by ATP (Doc. # 288) and a memorandum in opposition filed by Tdata (Doc. # 289).

For the reasons that follow, this Court **DENIES** ATP's motions *in limine*. (Docs. # 285, 287, 288.)

## I. Discussion

**A. Standard Involved**

The inquiry involved in and nature of a motion *in limine* decision are well settled:

> Motions in limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose. *See Jonasson v. Lutheran Child and Family Serv.,* 115 F.3d 436, 440 (7th Cir.1997). The court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. *Cf. Luce v. United States,* 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463 n.4, 83 L. Ed. 2d 443 (1984) (federal district courts have authority to make in limine rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. (citations omitted). Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See United States v. Connelly,* 874 F.2d 412, 416 (7th Cir.1989) (citing *Luce,* 469 U.S. at 41, 105 S. Ct. at 463) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."). *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F. Supp. 1398, 1400-01 (N.D. Ill.1993).

*Indiana Ins. Co. v. General Elec. Co.*, 326 F. Supp.2d 844, 846-47 (N.D. Ohio 2004). Cognizant of this standard, the Court shall address each of ATP's motions in turn.

2

**B. Actual Confusion (Doc. # 287)**

In *Gibson Guitar Corporation v. Paul Reed Smith Guitars, LP*, 423 F.3d 539 (6th Cir. 2005), the Sixth Circuit discussed the relationship between actual confusion and initial interest confusion. Although the court of appeals found the initial interest doctrine inapplicable in that case under the specific facts of *Gibson*–the court judiciously declined to extend product shape trademark protection so as to render the doctrine applicable–the appellate court nonetheless recognized that under certain circumstances, "evidence of initial-interest confusion comes into the eight factor *Frisch* test as a substitute for evidence of actual confusion." *Id.* at 550 n.15. Following the court of appeals,[2] this Court held in its January 23, 2006 Opinion and Order that

---

[2] One treatise has recognized that, unlike various other courts, the Sixth Circuit's decision in *Gibson* does not present actual confusion and initial interest confusion as different types of confusion for purposes of likelihood of confusion analysis. *See* Louis Altman & Malla Pollack, *Callmann on Unfair Competition, Trademarks and Monopolies* § 22:11.50 n.1.20 (4th ed.) (commenting that *Gibson* "appears to say that the initial interest confusion doctrine is not a separate type of confusion, but rather is applicable as but one part of an eight-factor trade identity confusion inquiry"). The approach taken by the court of appeals (and its consequent application by this Court) has provoked some questioning in law reviews and treatises, with one author stating that

> if the initial interest doctrine should not be applied in product shape trademark cases due to the limited number of shapes in which a product can be made, it could also be argued that the doctrine should not be applied to internet related cases involving the use of trademarks in the metatags of websites that are not operated by the trademark holder because there are only a limited number of ways in which a web designer can inform web users that their site is somehow related to the trademarked product or service.

*Id.* n.18 (quoting Marchisotto, *Gibson v. PRS: the Applicability of the Initial Interest Confusion Doctrine to Trademarked Product Shapes*, 24 Cardozo Arts & Ent. L.J. 883 (2006)). Although that author also presents an argument for expanding application of the initial interest confusion doctrine so as to encompass situations such as that found in *Gibson*, the contrary concerns expressed above regarding metatags are absent in the instant litigation, where there was no summary judgment evidence presented that Tdata's metatag use of the "ATP" mark targeted actual comparison of products, constituted fair use description, or was somehow otherwise

3

under the specific circumstances of the instant litigation, initial interest confusion substituted for actual confusion as one of eight factors in the likelihood-of-confusion inquiry. (Doc. # 191.) The Court then proceeded to conclude that under the totality of the eight factors, there was infringement here.

ATP now argues in its motion *in limine* that exclusion of all references by Tdata to the issue of or facts relating to actual confusion is warranted because this Court's reasoning as summarized above supports the propositions that "in initial interest confusion cases, 'actual confusion' is not relevant to the analysis that must be undertaken to determine trademark infringement" and "a finding of damages in no way rests upon a showing of actual confusion." (Doc. # 287, at 2.) The Court agrees that under precedent and the facts of this case, the former proposition is valid. But this Court does not agree that the latter proposition is correct.

In its memorandum in opposition, Tdata argues that "actual confusion is relevant to the issue of causation and the appropriateness of damages, if any, that arise from Tdata's liability for infringement." (Doc. # 291, at 1.) This Court agrees. As Tdata correctly recognizes, this Court has only determined liability, while the issues of causation and damages remain set for trial. Under Sixth Circuit precedent, actual confusion therefore still matters.

The Sixth Circuit's discussion in *Gibson* addressed the nature of actual confusion and initial interest confusion only in the context of the likelihood of confusion test. That limited discussion did not include the court of appeals opining on whether initial interest confusion could *also* substitute under the appropriate circumstances for actual confusion in regard to a

---

related to anything other than capturing internet traffic via infringing bait-and-switch use of the mark.

4

determination of statutory damages.  The Sixth Circuit has repeatedly explained that actual confusion or deception is required for the recovery of statutory damages,[3] while at least a lesser likelihood of confusion or deception is required in order for the trademark holder to obtain equitable relief.  *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) (citing *Frisch's Restaurant v. Elby's Big Boy*, 670 F.2d 642, 647 (6th Cir. 1982)).  It does not appear that the Sixth Circuit has had the opportunity to address directly whether initial interest confusion can serve as a substitute in the statutory damages stage, and this Court will not extend here the rationale of *Gibson*'s "substitution in the likelihood of confusion test" discussion.  There is no basis in Sixth Circuit precedent for doing so, and there are arguably logical reasons against such an extension.  For example, even without actual confusion, a party can obtain injunctive relief, which would in turn protect against that party incurring damages as a result of infringement.  But permitting statutory damages based on initial interest confusion alone would mean that a party that has suffered no economic loss could conceivably obtain monetary recovery.

The Court therefore declines ATP's invitation to expand the *Gibson* rationale beyond the inherently narrow and notably limited context in which it arose.  Accordingly, the Court **DENIES** ATP's motion *in limine* regarding actual confusion.  (Doc. # 287.)

### C.  Thieme (Doc. # 285)

Having resolved the threshold issue as to actual confusion presented by ATP's second

---

[3]  The Court notes that the Sixth Circuit has held that although actual confusion is required for an award of "marketplace damages," a plaintiff need not show actual confusion to recover for damage control expenses.  *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 690-91 (6th Cir. 2000).  Thus, "damage control expenses [are] recoverable upon a showing of the likelihood of actual confusion, rather than upon a showing of actual confusion itself."  *Id.* at 691.  Additionally, actual confusion is not required for recovery of a defendant's profits.  *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 606 (6th Cir. 1991).

motion *in limine*, the Court now turns to the motion in limine the company filed first. ATP asks this Court to exclude the analysis and testimony of Laura Thieme, one of Tdata's damages experts. As grounds for this motion, ATP asserts that Thieme's expert report disclosure fails to satisfy Fed. R. Civ. P. 26(a)(2); that the "report" is in fact five different documents, some of which this Court struck; that Tdata failed to disclose internal reports upon which Thieme relied; that Thieme's approach has been discredited; and that her analysis fails to account for the relevant time period of 1997 through 2002.

Tdata argues that ATP cannot now complain of many if not all of these issues because ATP has failed to comply with S.D. Ohio Civ. R. 37.1. That rule provides:

> Objections, motions, applications, and requests relating to discovery shall not be filed in this Court, under any provision in Rules 26 and 37, Fed. R. Civ. P., unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences. After extrajudicial means for the resolution of differences about discovery have been exhausted, then in lieu of immediately filing a motion under Rules 26 and 37, Fed. R. Civ. P., and S.D. Ohio Civ. R. 37.2, any party may first seek an informal telephone conference with the judicial officer assigned to supervise discovery in the case.

S.D. Ohio Civ. R. 37.1. On its face, Local Rule 37.1 thus contemplates one mandated step: that the parties exhaust among themselves all extrajudicial means for resolving any discovery dispute before filing any Rule 26 or 37 motion. Local Rule 37.1 then contemplates one discretionary step: that if the inter-party discussions have failed, either party *may but is not required to* request an informal telephone conference before filing a motion. Tdata argues that the motion *in limine* is barred because ATP failed to consult with Tdata to resolve the Rule 26 dispute.

Assuming *arguendo* that the scope of Local Rule 37.1 includes a motion *in limine*, the Court concludes that strict application of the rule at this juncture is not warranted. Theoretically, the Court could decline to rule on the motion at this time and require the parties to attempt to

resolve the issue before coming back to the Court. *See Rudawsky v. Borror*, No. 2:06-cv-144, 2007 WL 2127879, at *3 (S.D. Ohio Apr. 5, 2007) ("Because the parties failed [to] attempt to informally resolve this issue before plaintiffs filed their motion to compel, the Court will not rule on this issue. The parties are strongly DIRECTED to attempt to resolve this issue prior to seeking Court intervention, in accordance with Rule 37, Fed.R.Civ.P. and S.D. Oh. Civ. R. 37.1."). But given that the parties cannot agree in their briefing on what should occur as a result of the violation, such direction to extrajudicial proceedings would serve in this specific instance to require a perfunctory act that would only bring the parties directly back to this Court on the eve of trial.

There would be no point to requiring futile action. Accordingly, the Court in its discretion waives application of the local rule under the specific circumstances of this case. *See Anderson v. Village of Obetz*, No. 2:05-cv-701, 2007 WL 777978, at *5 (S.D. Ohio Mar. 12, 2007) ("while S.D. Ohio Civ. R. 37.1 does generally require parties to exhaust extrajudicial means for resolving discovery disputes prior to seeking court intervention, that requirement is often waived when, as here, any such attempts would be futile. Because it is unlikely that, absent a court order, Plaintiffs would have agreed to the sanctions sought by Defendants, Defendants were not required to exhaust extrajudicial means prior to filing their motion."); *see also Star Lock Sys., Inc. v. Dixie-Narco, Inc.*, No. 2:03-cv-616, 2006 WL 2265886, at *1 (S.D. Ohio Aug. 8, 2006) (declining to apply S.D. Ohio Civ. R. 37.1); S.D. Ohio Civ. R. 1.1(c) ("These rules govern practice and procedure in cases before the United States District Court for the Southern District of Ohio, unless otherwise ordered in a given case by the presiding judicial officer."). The Court can therefore turn to the merits of ATP's argument.

7

As noted, ATP first attacks the completeness of Tdata's disclosures. ATP also attacks Tdata's disclosure of Thieme's expert opinion in the form of five documents consisting of various declarations and memoranda. Addressing this latter attack first, this Court agrees with ATP that Tdata's presentation of its expert "report" is hardly a model of sound litigation practice. At the same time, however, ATP was eventually privy to Thieme's conclusions, if not the entirety of that upon which she relied. This partially mitigates against granting the motion *in limine*. *See Scipio v. City of Steubenville, Ohio*, No. 2:05-cv-759, 2007 WL 1406961, at *2 (S.D. Ohio May 8, 2007) (declining to grant motion *in limine* because "plaintiff had sufficient notice of the substance of [the expert's] report by its submission as an exhibit to defendants' motion for summary judgment"). It also distinguishes this situation from those in which there has been no expert report authored by the proffered expert. *See, e.g., Chicago Title Ins. Corp. v. Magnuson*, No. 2:03-cv-368, 2004 WL 5499517, at *4-5 (S.D. Ohio Dec. 30, 2004) (excluding expert witness on grounds including the witness' failure to have authored the disclosed report). Although the foregoing does not excuse Tdata's failure to disclose material associated with the formation of Thieme's opinion, the Court will render this problem harmless as explained below.

In regard to ATP's first area of complaint, Tdata concedes that it has failed to satisfy Fed. R. Civ. P. 26(a)(2)(B)(iv), (v), and (vi), which address the expert's publications, prior testimony within four years, and compensation, respectively. The company asserts in its briefing that it "will be providing ATP counsel with requested information pertaining to Ms. Thieme's rates, publications and testimonial background forthwith." (Doc. # 290, at 3.)

To facilitate this inexcusably belated disclosure, the Court **ORDERS** that Tdata shall disclose, by May 30, 2008, all undisclosed material discussed in the briefing, as well as any

8

additional material that Tdata should have previously disclosed. ATP in turn may file a motion for attorney fees incurred as a result of the discovery violation. Additionally, if the new information necessitates a continuance of the trial date, ATP may so request one of this Court. Although this litigation is significantly old, the Court recognizes that such a continuance of the trial date may be necessary and would be likely well taken.

The foregoing represents a lesser sanction than that possible for Tdata's poor handling of its discovery obligations. Although the Court considered wholesale exclusion as the motion *in limine* pursued, such action is neither necessary nor appropriate at this time. The action undertaken serves instead to render harmless the flawed disclosures while promoting a disposition on the merits; at the same time, ATP is not penalized by Tdata's conduct and ATP can obtain its attorney fees. The Court advises Tdata that should it fail to comply with this Order and continue to fail to meet its obligations, however, it will be subject to any and all sanctions, including the most severe, that are available to this Court.

ATP next attacks Thieme's testimony as unreliable. Assuming the applicability of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Court declines ATP's invitation to exclude Thieme under the test set forth in that case. The Court has previously explained:

> [A]lthough recognizing the weaknesses of Thieme's spartan account of her work, the Court disagrees that Thieme's declaration is violative of *Daubert*. To the extent that Thieme has conducted independent research, it appears that she simply reviewed existing material and entered "ATP Navigator" into four well-known search engines. Although Thieme could certainly have been more thorough in explaining her actions, the Court cannot say either that she has failed to divulge the basic methods she employed or that the methodology presented is unreliable so as to warrant striking the declaration. To the extent that Thieme has relied on work completed by others, such as Wordtracker, the Court analogizes her reliance on this information to an expert's reliance on and disclosure of others' work;

>*Daubert* does not require that Thieme detail this work in order to use it as part of the basis for forming her opinion.

(Doc. # 188, at 2.) The Court similarly concludes that ATP's complaints about Thieme's opinion target more issues with the weight to be afforded her conclusions and even credibility than admissibility. To be certain, there are notable issues with the completeness and overall value of Thieme's testimony; it remains, as the Court previously noted, an arguably precarious argument. (Doc. # 191, at 18 n.12.) But her testimony is of some relevance and value to the remaining trademark issues, even if it cannot address well all of the relevant years involved (and apparently the manner in which searches operated in those years). And as described above, there is potentially more involved in this case than simply initial interest confusion. Thieme's opinion in regard to actual confusion is relevant.

One last comment is necessary. The Court is concerned by ATP's statement that "although this Court granted summary judgment of trademark infringement and unfair competition based on the use of the 'ATP' mark, the majority of Tdata's declarations and documents focus on the more specific mark, 'ATP Navigator,' and thus are completely irrelevant to the current status of this case." (Doc. # 285, at 8.) This raises the issue of whether ATP has abandoned its case regarding the other marks once at issue in this litigation. Previously, ATP declined to pursue summary judgment on any mark other than "ATP" (Doc. # 99, at 6 n.3; Doc. # 113, at 13), but there has been no clear deletion of these other marks from this case. Thieme's opinion is of limited value in regard to the "ATP" mark and of substantially more value in regard to the "ATP Navigator" mark.

For the foregoing reasons, the Court **DENIES** the motion *in limine* regarding Thieme. (Doc. # 285.)

### D. Detriment/Damages Award (Doc. # 288)

In its final motion *in limine*, ATP asks this Court to exclude any references to, questioning about, or testimony by Tdata, its witnesses, or its counsel in regard to any adverse effect that a damages award could have on Tdata or its employees. ATP reasons that the jury might be swayed if it were to learn of such potential detrimental effects as company bankruptcy or employee layoffs.

Tdata agrees that it cannot use its size and financial status to appeal to any sympathies or prejudices. But the company argues that such information is not only relevant but also necessary given that an award of damages in a trademark case is subject to equitable considerations. This Court agrees with Tdata. Because recovery in trademark litigation is "subject to the principles of equity," 15 U.S.C. § 1117(a), this information is of some potential relevance under Fed. R. Evid. 402 and its value outweighs the limited risk of unfair prejudice under Fed. R. Evid. 403. A limiting instruction as to the permissible use of the evidence can address any implicit appeal to sympathy or prejudice, and counsel shall not even attempt to use evidence for such improper purposes.

The Court therefore **DENIES** ATP's motion *in limine* regarding detrimental effects. (Doc. # 289.)

## II. Conclusion

The Court **DENIES** ATP's motions *in limine*. (Docs. # 285, 287, 288.) As with all *in limine* decisions, these rulings are subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

The Court also **ORDERS** Tdata to disclose, by May 30, 2008, all undisclosed material

discussed in the briefing, as well as any additional material that Tdata should have previously disclosed. ATP may file a motion for attorney fees incurred as a result of the discovery violation and may request a continuance of the trial date if necessary, which the Court would grant upon good cause shown.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE